UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEM A. BARRIA and MARIA T. BARRIA, | No. 2:15-cv-01413-KJM-AC |
| Plaintiffs, | |
| v. | ORDER |
| WELLS FARGO BANK, N.A.; NDEX WEST, LLC; and DOES 1-10 inclusive,[1] | |
| Defendants. | |

This matter is before the court on the motion to dismiss the complaint by defendant Wells Fargo, N.A. (ECF No. 6.)  Plaintiffs Gem and Maria Barria oppose the motion. (ECF No. 8.)  Defendant replied to the opposition.  (ECF No. 9.)  The court decided the motion

---

[1] If a defendant's identity is not known before the complaint is filed, a "plaintiff should be given an opportunity through discovery to identify the unknown defendants," *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quotation marks omitted) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).  However, doe defendants will be dismissed if "it is clear that discovery would not uncover the[ir] identities, or that the complaint would be dismissed on other grounds." *Id.* (quotation marks omitted) (quoting *Gillespie*, 629 F.2d at 642).  Court also must dismiss defendants who have not been served within 120 days after the filing of the complaint unless good cause is shown.  Fed. R. Civ. P. 4(m); *see generally Glass v. Fields*, No. 09-00098, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011).

without a hearing.  As explained below, the court GRANTS defendant Wells Fargo's motion to dismiss.

I.   BACKGROUND

The claims in this case arise out of defendants' alleged practice of providing insufficient information to borrowers so that borrowers will default on their mortgage loan and defendants can foreclose on their homes.  (*See generally* First Am. Compl. ("Compl."), ECF No. 1-1.)  The Complaint alleges the facts set out below.

Plaintiffs are the owners of real property located in El Dorado County (the Property), and defendant is the holder of the $521,242 loan secured by the Property.  (*Id.* ¶¶ 17-19.)  In 2004, plaintiffs received a mortgage loan from World Savings Bank, FSB ("World Savings").  (*Id.* ¶ 17.)  World Savings subsequently changed its name to Wachovia Mortgage, FSB ("Wachovia"), which in turn changed its name to Wells Fargo Bank Southwest before merging with defendant Wells Fargo in 2009.  (*Id.* ¶ 19.)  Plaintiffs made payments for six years on the loan.  (*Id.* ¶ 20.)  On December 20, 2012, Wells Fargo, through its agent NDEX West, LLC ("NDEX"), filed a Notice of Default ("NOD"), and also included a Declaration of Compliance based on California Civil Code section 2923.55(c).  (*Id.* ¶ 21.)  The Declaration of Compliance claims that "[Wells Fargo] had contacted plaintiffs to discuss their financial situation and explore workout options," but plaintiffs aver they were never actually contacted.  (*Id.* ¶ 22.) "Subsequently, Wells Fargo caused three (3) Notice[s] of Trustee's Sale to be recorded."  (*Id.* ¶ 23.)  Wells Fargo, NDEX, and their agents never "contact[ed] plaintiffs in person, in writing, or by telephone to discuss plaintiffs' financial condition and provide potential foreclosure prevention options prior to filing the NOD."  (*Id.* ¶ 26.)  Plaintiffs were available to meet with the defendants at all times before the NOD filing.  (*Id.* ¶ 27.)

Based on these allegations, plaintiffs assert the following against the defendant: (1) violations of California Civil Code section 2923.55; (2) violations of the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; (3) violations of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788–1788.33; (4) unfair competition in violation of

California Business and Professions Code § 17200 *et seq*.; and (5) negligent training and supervision.  (*See generally* ECF No. 1-1.)

II.     JUDICIAL NOTICE

"The court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the territorial jurisdiction, or (2) can be accurately and readily determined by trial courts from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court shall take judicial notice if requested by a party and supplied with the necessary information.  Fed. R. Evid. 201(c)(2).  Judicially noticed facts often consist of matters of public record, such as prior court proceedings, *see, e.g.*, *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988) (administrative materials).

While a court may take judicial notice of a judicial or administrative proceeding that has a "direct relation to the matters at issue," a court can only take judicial notice of the existence of those matters of public record, such as the existence of a motion or of representations having been made therein.  The court may not take judicial notice of the veracity of the arguments and disputed facts raised in the proceeding, or one party's interpretation of the ruling.  *United States v. Southern California Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. Jan. 9, 2004) (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)).

Defendant asks that this court take judicial notice of eight exhibits:

1.     Exhibit A is a Deed of Trust dated January 4, 2004, and recorded in the El Dorado County Recorder's Office on January 12, 2004 as DOC-2004-0002111-00.

2.     Exhibit B is a Certificate of Corporate Existence dated April 21, 2006, issued by the Office of Thrift Supervision, Department of the Treasury ("OTS"), certifying that World Savings Bank, FSB was a federal savings bank.

3.     Exhibit C is a letter dated November 19, 2007, on the letterhead of the OTS, authorizing a name change from World Savings Bank, FSB to Wachovia Mortgage, FSB ("Wachovia").

3

1    4.    Exhibit D is a Charter of Wachovia, effective December 31, 2007, and
2          signed by the Director of the OTS. In Section 4 of the Charter, Wachovia
3          acknowledges that it was subject to the Home Owner's Loan Act ("HOLA") and
4          the OTS.
5    5.    Exhibit E is an Official Certification of the Comptroller of the Currency,
6          stating that effective November 1, 2009, Wachovia changed its name to Wells
7          Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank,
8          N.A.
9    6.    Exhibit F is a printout from the website of the Federal Deposit Insurance
10         Corporation (FDIC), showing the history of World Savings and its transition to
11         Wells Fargo.
12   7.    Exhibit G is a Notice of Default and Election to Sell Under Deed of Trust
13         dated December 18, 2012 and recorded on December 20, 2012 in the El Dorado
14         County Recorder's Office as DOC-2012-006963-00.

(ECF No. 7, Exs. A–G.)

Plaintiffs do not object to defendant's request.

With respect to Exhibits A and G, judicial notice is appropriate because the documents are matters of public record. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2011). With respect to Exhibits B, C, D, E, and G, judicial notice is appropriate because "those documents reflect the official acts of the executive branch of the United States." *Preciado v. Wells Fargo Home Mortgage*, No. 13-00382, 2013 WL 1899929, at *3 (N.D. Cal. May 7, 2013). With respect to Exhibit F, judicial notice is appropriate "because it is information obtained from a governmental website." *Id.* The court takes notice as requested.[2]

---

[2] Defendant also states in its motion to dismiss there is an exhibit H to its request for judicial notice, but the court has not located such an exhibit. *See* Mot. at 2.

4

III.   LEGAL STANDARD

    A.   Motion to Dismiss

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes these factual allegations are true and draws reasonable inferences from them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Twombly*, 550 U.S. at 555. But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of a cause's elements alone do not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). Evaluation under Rule 12(b)(6) is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679. And aside from the complaint, district courts have discretion to examine documents incorporated by reference, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); affirmative defenses based on the complaint's allegations, *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013); and proper subjects of judicial notice, *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 976 (9th Cir. 2012).

/////

/////

B.      Leave to Amend

In determining defendant's motion, the court also considers whether to grant leave to plaintiffs to further amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127, 1140 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* at 1127 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g.*, 512 F.3d 522, 532 (9th Cir. 2008). However, it is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile. *Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau*, 701 F.2d 1276, 1292–93 (9th Cir. 1983).

IV.   DISCUSSION

A.      California Civil Code Section 2923.55

California's Homeowner's Bill of Rights ("HBOR"), California Civil Code section 2924.17, took effect on January 1, 2013, providing borrowers with a private right of action against the mortgage servicer for, in this case, a violation of California Civil Code section 2923.55. *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1152 (N.D. Cal. 2013). Section 2923.55 states that after a trustee's deed upon sale has been recorded, the mortgage servicer can be "liable . . . for actual economic damages . . . resulting from a material violation of section 2923.55 . . . ." Cal. Civ. Code § 2924.12(b). "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of [s]ection 2923.55." *Id.* § 2924.12(a)(1). Neither section 2924.12 nor section 2923.55 contains a retroactivity provision. "California courts comply with the legal principle that unless there is an express retroactivity provision, a statute will not be applied retroactively unless it is very clear

6

from extrinsic sources that the Legislature . . . must have intended a retroactive application."
*Myers v. Philip Morris Cos., Inc.*, 28 Cal. 4th 828, 841 (2002) (quotations and citations omitted);
*see also Rockridge Trust*, 985 F. Supp. 2d at 1152.

Defendant argues plaintiffs' claim cannot proceed under the current California Civil Code section 2923.55 because "[t]he foreclosure instrument was recorded prior to the HBOR's enactment," and the "HBOR does not apply retroactively." (ECF No. 6 at 5). Plaintiffs respond that because current California Civil Code subsections 2923.5 and 2923.55 simply continue the prior version of California Civil Code section 2923.5, plaintiffs can properly assert a violation of section 2923.55 as currently worded. (ECF No. 8 at 4.)

Here, plaintiffs allege the NOD is invalid because defendant failed to comply with section 2923.55. Plaintiffs argue that section 2923.55 is a continuation of the prior version of section 2923.5 with only minor changes and thus the current version of section 2923.55 also applies to loans and borrowers covered by the prior version; defendants should have complied with section 2923.55 before recording the NOD. Opp'n at 4-5. However, the NOD was recorded on December 20, 2012, before the HBOR was enacted. As this court has previously noted, courts uniformly have found the HBOR is not retroactive. *Cooksey v. Select Portfolio Servicing, Inc.*, No. 14-1237, 2014 WL 4662015, at *6 (E.D. Cal. Sept. 18, 2014).

The court dismisses the first claim with leave to amend if plaintiffs can do so consonant with Federal Rule of Civil Procedure Rule 11, which appears to depend on whether a foreclosure sale has occurred.

B.   <u>Federal Fair Debt Collection Practices Act and California's Rosenthal Act</u>

Under the provisions of the Federal Fair Debt Collection Practices Act ("the FDCPA"), 15 U.S.C. § 1692, debt collectors are prohibited "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010). California's Rosenthal Fair Debt Collection Practices Act ("the RFDCPA" or "the Rosenthal Act"), "like its federal counterpart, is designed to protect consumers from unfair and abusive debt collection practices." *Robinson v. Managed Accounts Receivable Corp.*, 654 F. Supp. 2d 1051,

7

1060 (C.D. Cal. 2009) (citing Cal. Civ. Code § 1788.1); *Colbert v. Sage Point Lender Services*, No. 1:14-CV-01626-LJO, 2014 WL 7409291, at *4 (E.D. Cal. Dec. 30, 2014). Indeed, the provisions of the FDCPA are incorporated into the Rosenthal Act by California Civil Code section 1788.17. Consequently, conduct by a debt collector that violates the FDCPA violates the Rosenthal Act as well. *See Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) (finding that whether a communication "violates the Rosenthal Act turns on whether it violates the FDCPA"); *Crockett v. Rash Curtis & Associates*, 929 F. Supp. 2d 1030, 1033 (N.D. Cal. Mar. 14, 2013) (finding that "a claim for violation of Rosenthal Act Section 1788.17 simply requires showing that a defendant violated any of several provisions of the FDCPA").

    1. FDCPA

    To state a claim alleging violation of the FDCPA, a plaintiff must show: "(1) that she is a consumer; (2) that the debt arises out of a transaction entered into for personal purposes; (3) that the defendant is a debt collector; and (4) that the defendant violated one of the provisions of the FDCPA." *Miranda v. Law Office of D. Scott Carruthers*, No. 10-01487, 2011 WL 2037556, at *4 (E.D. Cal. May 23, 2011). Under the FDCPA, claims are assessed from the perspective of the "least sophisticated debtor," that is, what would the least sophisticated debtor believe. *Rockridge*, 985 F. Supp. 2d at 1136. Defendant does not contend the first two elements of the FDCPA are not properly pled. Instead, defendant argues it is not a "debt collector" as defined in the FDCPA, and that plaintiffs' allegations with respect to the fourth element are not "cognizable" because nonjudicial foreclosure is not the same as "debt collection" within the meaning of the FDCPA. (ECF No. 6 at 7.) The court will address each argument in turn.

    a) Debt Collector

    The FDCPA defines the term "debt collector" as including: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6). To adequately plead this claim, a plaintiff must allege specific facts showing that a defendant is a "debt collector" within the meaning of the statute. *Schlegel v. Wells*

*Fargo Bank, N.A.*, 720 F.3d 1204, 1208 (9th Cir. 2013); *Kalnoki v. First American LoanStar Trustee Services LLC*, No. 11- 02816, 2014 WL 1757216, at *2 (E.D. Cal. Apr. 29, 2014), *recon. denied*, No. 11- 02816, 2014 WL 2918846 (E.D. Cal. June 26, 2014) (complaint must plead "factual content that allows the court to draw the reasonable inference" that defendant is a debt collector).

Section 1692a(6)(A) expressly excludes "creditors" from the statutory definition of "debt collector." 15 U.S.C. §§ 1692a(4), 1692a(6)(A); *Rowe v. Educational Credit Management Corp.*, 559 F.3d 1028, 1031 (9th Cir. 2009). A creditor is defined under section 1692a(4) as "any person who offers or extends credit creating a debt or to whom a debt is owed."

Plaintiffs fail to allege facts sufficient to support a determination that defendant is a debt collector. The complaint does not allege that "the 'principal purpose' of Wells Fargo's business is debt collection" under section 1692a(6)(1). *Schlegel*, 720 F.3d at 1209; *Rockridge*, 985 F. Supp. 2d at 1137. Plaintiffs state only that Wells Fargo is "in the business of lending and servicing mortgage loans on behalf of investors, lenders, and trustees." (ECF No. 1-1 ¶ 1.)

The complaint also fails to allege facts showing that Wells Fargo "collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" under 15 U.S.C. § 1692a(6). The complaint makes no factual allegations to support a plausible inference that Wells Fargo regularly collects debts owed to someone other than Wells Fargo. The complaint also does not allege that in this case Wells Fargo is collecting on debt owed to another. Plaintiffs first received the mortgage loan from World Savings. (ECF No. 1-1 ¶ 17.) World Savings then changed its name to Wachovia. (ECF No. 1-1 ¶ 19; ECF No. 7, Ex. C.) Wachovia subsequently changed its name to Wells Fargo Bank Southwest, which later merged into Wells Fargo. (ECF No. 1-1 ¶ 19; ECF No. 7, Ex. E.) The complaint together with the exhibits provided by defendant establishes that Wells Fargo is the successor-in-interest to Wachovia. The debt at issue is thus owed to Wells Fargo as successor-in-interest to the original lender. Hence, Wells Fargo is not collecting on a debt owed to another as provided by 15 U.S.C. § 1692a(6). The court finds that plaintiffs fail to allege facts sufficient to support a determination that defendant is a debt collector.

b)     Debt Collection

The Ninth Circuit has not addressed whether foreclosure proceedings constitute debt collection under FDCPA. However, district courts in the Ninth Circuit have consistently concluded that nonjudicial foreclosure actions do not constitute debt collection under the FDCPA to the extent a defendant's actions are limited to those necessary to effectuate the nonjudicial foreclosure. *Natividad v. Wells Fargo Bank, N.A.*, No. 3:12-CV-03646 JSC, 2013 WL 2299601, at *9 (N.D. Cal. May 24, 2013) ("plaintiff alleging a proper FDCPA claim must allege that the defendant engaged in an[ ] action beyond statutorily mandated actions for non-judicial foreclosure"); *Aniel v. T.D. Serv. Co.*, 2010 WL 3154087, at *1 (N.D. Cal. Aug. 9, 2010) ("allegations relating to the FDCPA claim relate to foreclosure proceedings and courts throughout this circuit have concluded that foreclosure does not constitute 'debt collection' under the FDCPA"). A proper FDCPA claim must allege that the defendant "engaged in an[ ] action beyond the statutorily mandated actions for nonjudicial foreclosure." *Natividad*, 2013 WL 2299601, at *9 (citing *Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut. Inc.*, 2010 WL 3769459, at *4 (N.D. Cal. Sept. 22, 2010) (defendants' behavior went beyond foreclosure proceedings when they repeatedly "obfuscated the truth" concerning loan amounts and payments)).

Here, plaintiffs argue that defendant "engaged in debt collection, in violation of the FDCPA, because its activities were beyond the scope of ordinary foreclosure process." (ECF No. 8 at 8.) However, plaintiffs do not allege facts showing that defendant actually went beyond the scope of what is needed to complete an "ordinary" nonjudicial foreclosure process in California, presumably under California Civil Code sections 2924 *et seq.* In *Rockridge,* the court denied defendant's motion to dismiss the FDCPA claim because the challenged acts were related to loan modification negotiations as oppose to the execution of the nonjudicial foreclosure process. *See Rockridge*, 985 F. Supp. 2d at 1137; *cf.* Cal. Civ. Code §§ 2924-2924k (including California nonjudicial foreclosure provisions). However, here the acts set forth in the Complaint are related to the execution of the nonjudicial foreclosure process. The Complaint provides only that "[d]efendant[ ], in [its] attempt to collect on the debt through foreclosure, filed a Declaration

of Compliance that falsely asserted that [it] had diligently attempted to contact [plaintiffs]" and "[d]efendants cannot initial a foreclosure proceeding to collect on the debt without first contacting plaintiffs."  (ECF No. 1-1 ¶ 54(c).)

Because the Complaint fails to allege that Wells Fargo is a "debt collector" and that Wells Fargo's activities were beyond the scope of the statutory nonjudicial foreclosure process, the court GRANTS defendant's motion to dismiss the FDCPA claim, however WITH leave to amend if possible.

### 2. Rosenthal Act

The Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts."  Cal. Civ. Code § 1788.1.  The Rosenthal Act also provides, with limited exception, that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the FDCPA.  Cal. Civ. Code § 1788.17. Where a Rosenthal Act claim relies on a violation of the FDCPA, the FDCPA's objective standard applies.  *Rockridge*, 985 F. Supp. 2d at 1165; *Reyes v. Wells Fargo Bank, N.A.*, No. 10-01667, 2011 WL 30759, at *20 (N.D. Cal. Jan. 3, 2011).  In other words, as noted above, claims are assessed from the perspective of the "least sophisticated debtor." *Id.* (citing *Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1989)).  "If the least sophisticated debtor would 'likely be misled' by a communication from a debt collector, the debt collector has violated the Act." *Id.* (citing *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (quoting *Swanson*, 869 F.2d at 1225)).  "The least sophisticated debtor is a 'lower' standard 'than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Id.* (citing *Terran v. Kaplan*, 109 F.3d 1428, 1431–32 (9th Cir. 1997) (quoting *Swanson*, 869 F.2d at 1227)).

At the same time, the Rosenthal Act's definition of "debt collector" is "broader than that contained in the FDCPA." *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008).  Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in

1  debt collection." Cal. Civ. Code § 1788.2(c). "Thus, a mortgage servicer may be a 'debt
2  collector' under the FDCPA even if it is the original lender, whereas, such an entity would be
3  excluded from the definition of debt collector under the federal act." *Reyes*, 2011 WL 30759, at
4  *19. However, as with the FDCPA, foreclosure on a deed of trust does not give rise to a claim
5  under the Rosenthal Act. *Rockridge*, 985 F. Supp. 2d at 1166; *Sipe v. Countrywidebank*, No. 09-
6  798, 2010 WL 2773253, at *15 (E.D. Cal. July 13, 2010) (collecting cases). The Rosenthal Act
7  applies only if a claim arises out of debt collection activities beyond the scope of the ordinary
8  foreclosure process. *Reyes*, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011).

9  Here, defendant as the original lender falls within the broader definition of a "debt
10 collector" under the Rosenthal Act. *Izenberg*, 589 F. Supp. 2d, at 1199; *Reyes*, 2011 WL 30759,
11 at *19. However, as with plaintiffs' allegations under the FDCPA, plaintiffs' allegations under
12 the Rosenthal Act fail to allege any conduct beyond nonjudicial foreclosure. Plaintiffs allege that
13 defendant violated the Rosenthal Act by "intentionally fail[ing] to contact [p]laintiffs to discuss
14 foreclosure alternatives prior to recording a NOD," "fil[ing] a Declaration of Compliance that
15 falsely asserted that they had diligently attempted to contact [p]laintiffs," and "attempting to
16 collect interest, fees, or other charges from [p]laintiffs that are not expressly authorized by the
17 agreement creating the alleged debt or otherwise permitted by law." (ECF No. 1-1 ¶ 63). These
18 actions all are related to the execution of the nonjudicial foreclosure process. The generalized
19 allegations also are legal conclusions, and are insufficiently detailed to give defendant fair notice
20 of the wrongful acts. *Twombly*, 550 U.S. at 555; *Jacobson v. Balboa Arms Drive Trust No. 5402
21 HSBC Financial Trustee*, No. 10-CV-2195-JM RBB, 2011 WL 3328487, at *8 (S.D. Cal. Aug. 1,
22 2011).

23 Because plaintiffs have failed to allege any conduct beyond steps to effect
24 nonjudicial foreclosure, the court GRANTS defendant's motion to dismiss plaintiffs' claim
25 that defendant violated the Rosenthal Act, WITH leave to amend if plaintiffs can do so consonant
26 with Rule 11.
27 /////
28 /////

12

### C. California Business and Professions Code § 17200, *et seq.* (UCL)

To bring an unfair competition law (UCL) claim, a plaintiff must show standing and economic injury. *See Becker v. Wells Fargo Bank*, No. 12- 501 KJM, 2013 WL 3242249, *4 (E.D. Cal. June 25, 2013) ("[T]o bring a UCL claim, a plaintiff must show . . . unlawful, unfair, or fraudulent business act or practice, [and] also show that he or she suffered a loss of money or property . . . caused by the . . . business practice.").

#### 1. Standing

To have standing under California's UCL, plaintiffs must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury; and (2) show that the economic injury was caused by the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).

The economic injury must be "sufficient to constitute an 'injury in fact' under Article III of the Constitution," and the requisite injury must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Birdsong*, 690 F.3d at 958–60 (9th Cir. 2009) (citing *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 814 (Cal. Ct. App. 2007)). In *Kwikset,* the court identified four injuries that would qualify as economic injury under the UCL:

> (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

51 Cal. 4th at 323.

After a plaintiff establishes loss, he or she must show a "causal connection" between the economic injury and the alleged unfair conduct. *Id.* at 326. A plaintiff fails to satisfy the causation prong of the statute if he or she would have suffered "the same harm whether or not a defendant complied with the law." *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (Cal. Ct. App. 2007); *see, e.g.*, *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 523

(Cal. Ct. App. 2013) (No causal relations exist where plaintiff's default triggered foreclosure and not defendant's action though impending foreclosure is an adequate economic injury. ).

Here, the court finds that an injury in fact is pled. Plaintiffs allege that, "[p]laintiffs will be evicted from their home" because of defendant's act, and "plaintiffs have suffered, and will continue to suffer, substantial and irreparable injury from the imminent loss of their Property." (ECF No. 1-1 ¶¶ 88–89.) Loss of property alone, an economic injury, satisfies the first prong of the standing requirement under the UCL. *See Kwikset*, 51 Cal. 4th at 323.

Given that there is an injury, the court next looks at whether a causal relationship exists. Here, plaintiffs allege that defendant engaged in unfair business practices with respect to mortgage loan servicing, foreclosure of residential properties, and other related matters by:

> (1) [f]iling the NOD unlawfully; (2) failing to afford plaintiffs a fair opportunity to be evaluated for all available foreclosure prevention alternatives; (3) concealing the true character, quality, and nature of their intent to foreclose on plaintiffs' Property without adequate notice; (4) filing a Declaration of Compliance that is false; and (5) foreclosing on the property without the legal authority or just cause to do so.

(ECF No. 1-1, ¶ 75.) As in *Jenkins*, however, there is no causal relationship between plaintiffs' economic injury and the alleged unfair practices here, because plaintiffs defaulted before the alleged unfair practices occurred. In fact, it was plaintiffs' default that triggered the NOD and the subsequent non-judicial foreclosure on the Property.

Because plaintiffs have failed to establish a causal relationship between plaintiffs' economic injury and the alleged unfair practices, they do not have standing to bring a UCL claim. Because the court grants leave to amend, with the possibility plaintiffs can establish standing, it addresses the elements of a UCL claim below.

2.   Elements of a UCL Claim

The UCL prohibits unfair competition, which is defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The statute's language has been construed as prohibiting three distinct types of practices: (1) unlawful acts or practices; (2) unfair acts or practices; and (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Here, plaintiffs rely on all three prongs.

14

### a) Unlawful

To allege a claim under the "unlawful" prong, a plaintiff must show a violation of some independent law. *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). The predicate violation may be federal, state, local, or common law. *Id.* (section 17200 "borrows" violations of other laws and treats them as unlawful practices actionable separately under section 17200). Because the statute borrows violations of other laws, a failure to state a claim under the underlying law translates to a failure to state a claim under the unlawful prong. *See Saunders v. Superior Court,* 27 Cal. App. 4th 832, 838 (Cal. Ct. App. 1994).

Here, plaintiffs allege that defendant violated California Civil Code section 2923.55(a), the FDCPA and the Rosenthal Act. (ECF No. 1-1 ¶ 79.) But the court has found plaintiffs have failed to state a claim under these underlying laws, meaning plaintiffs also have failed to state a claim under the unlawful prong of the UCL.

### b) Unfair Acts

As this court has had an opportunity to review previously, California courts have provided several definitions of "unfair" under the UCL:

> 1. "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006).
>
> 2. "'[U]nfair' business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001) (internal citation and quotation marks omitted).
>
> 3. An unfair business practice means "the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003).

*Vincent v. PNC Mortgage, Inc.*, No. 14-00833, 2014 WL 2766116, at *8 (E.D. Cal. June 18, 2014) .

Here, to the extent plaintiffs claim relies on defendant's alleged violation of the current version of California Civil Code section 2923.5, the court has found that section does not

15

1  apply retroactively.  Otherwise, plaintiffs simply parrot language from the statute in making

2  essentially conclusory statements and have not satisfied any of the available definitions:

3  
> [defendant's] acts constitute 'unfair' business acts . . . because the acts offend public policy and are substantially injurious to [p]laintiffs and all consumers . . . Defendant['s] actions are immoral, unethical . . . and are substantially injurious to consumers such as [p]laintiff . . . furthermore, [d]efendant['s] wrongful conduct prevented [p]laintiffs from actively and quickly pursuing other workout options . . . .

7  (ECF No. 1-1 ¶ 80–82.)  Plaintiffs have not alleged with specificity any wrongdoing by the

8  defendant, and so have not met the requirement of stating "with reasonable particularity the facts

9  supporting the statutory elements of the violation." *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d

10  1127, 1145 (E.D. Cal. 2013) (citing *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612,

11  619 (1993)).

12              c)      Fraudulent

13              The fraudulent prong of the UCL is "governed by the reasonable consumer test: a

14  plaintiff may demonstrate a violation by show[ing] that [reasonable] members of the public are

15  likely to be deceived." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (citation

16  omitted).  A UCL "plaintiff need not show that he or she or others were actually deceived or

17  confused by the conduct or business practice in question." *Schnall v. Hertz Corp.*, 78 Cal. App.

18  4th 1144, 1167 (2000).  Whether a business practice is deceptive will usually be a question of fact

19  not appropriate for decision on a motion to dismiss. *Williams v. Gerber Products Co.*, 552 F.3d

20  934, 938 (9th Cir. 2008).  At the same time, an unfair practice claim grounded in fraud must be

21  pled with the particularity required by Federal Rule of Civil Procedure 9(b).  *Vess v. Ciba-Geigy*

22  *Corp. USA*, 317 F.3d 1097, 1103 (2003).

23              In support of their fraudulent prong UCL claim, plaintiffs allege that defendant

24  engaged in a fraudulent course of conduct by unlawfully filing the NOD and failing to contact

25  plaintiffs first.  ECF No. 1-1 ¶ 86.  This practice prevents plaintiffs and other consumers from

26  exercising their right, and such practices are likely to deceive the public and affect consumers'

27  rights. *Id.* ¶ 85.  Plaintiffs present only conclusory allegations of fraud, failing to allege with

28  specificity when, how, and who engaged in fraud.  In addition, to the extent plaintiffs' claim

relies on an underlying claim that defendant violated California Civil Code section 2923.5, that section is not applicable as discussed above.

The court GRANTS defendant's motion to dismiss plaintiffs' UCL claim, WITH leave to amend.

### D. Negligent Supervision and Training

Under California law, an employer can be liable for negligently hiring, supervising or retaining an unfit employee. *Inzerillo v. Green Tree Servicing LLC*, 13-06010, 2014 WL 1347175, at * 6 (N.D. Cal. Apr. 3, 2014) (citing *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (Cal. Ct. App. 1996)). "[I]f an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees." *Inzerillo*, 2014 WL 1347175, at *6 (citing *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998)). Such liability will be imposed on an employer if it "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1139 (2009) (citing *Doe*, 50 Cal. App. 4th at 1054). A plaintiff alleging a negligence cause of action needs to state non-conclusory facts in support of this claim and identify a particularized harm that resulted from an individual employee's action. *Cf. O'Connor v. Capital One, N.A.*, No. 14-00177, 2014 WL 2215965, at *9 (N.D. Cal. May 29, 2014).

In addition, a plaintiff alleging negligent training under California law must show that the employer negligently trained the employee in the performance of the employee's job duties, and as a result of such negligent instruction the employee while carrying out his job duties caused injury or damage to the plaintiff. *Garcia ex rel. Marin v. Clovis Unified School Dist.*, 627 F. Supp. 2d 1187, 1208 (E.D. Cal. Apr. 16, 2009); *see State Farm Fire & Casualty Co. v. Keenan*, 171 Cal.App.3d 1, 23 (1985).

Here, the Complaint lacks factual allegations to support plaintiffs' claim. Plaintiffs have not pled any specific facts with respect to defendant's alleged negligence in supervising or training any employee or individual for whom defendant could be held

responsible.  Merely alleging that "[d]efendant[] owed [p]laintiffs a duty of reasonable care to train and supervise [its] employees and agents to comply with all applicable laws" (ECF No. 1-1 ¶ 92), and that "[d]efendant[] breached [its] duty by failing to ensure that [its] agents and/or employees complied with California Civil Code § 2923.55 . . . ," is insufficient.  (*Id.* ¶ 94.) While plaintiffs do not need to "prove the case on the pleadings," plaintiffs must allege "more than conclusions."  *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679).

Plaintiffs also have not identified any wrongful conduct by an agent and/or employee of defendant.  Plaintiffs' claim is based solely on allegations that defendants failed to ensure that their agents and/or employees complied with California Civil Code section 2923.55, with respect to the NOD, and the Truth in Lending Act ("TILA").  (ECF No. 1-1 ¶ 94–96.)  For the reasons discussed above, the first two allegations do not establish wrongful conduct. Regarding TILA, plaintiffs brought the TILA claim more than one year after the alleged violation.  *See Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1298 (S.D. Cal. Aug. 25, 2011).  Plaintiffs obtained the loan in January 2004, but did not file this action until April 1, 2015.  (ECF No. 1-1.)  The TILA claim is therefore time-barred.

The court GRANTS defendant's motion to dismiss plaintiffs' negligent supervision claim WITHOUT leave to amend so far as the claim is based on TILA.   The court GRANTS the balance of defendant's motion to dismiss plaintiffs' negligent supervision claim WITH leave to amend.

V.     CONCLUSION

For the foregoing reasons, the court GRANTS defendant's Motion to Dismiss. Plaintiffs' first amended complaint is due within twenty-one (21) days from the date of this order.

IT IS SO ORDERED.

DATED: February 8, 2016.

UNITED STATES DISTRICT JUDGE